SMITH v. ACKER PROCESS CO.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

1. ATTORNEY'S LIEN—STATUTE—FINANCIAL ABILITY OF CLIENT—EVIDENCE—SUFFICIENCY.

On an application, under Code Civ. Proc. § 66, concerning attorneys' liens, for an order of continuance to determine and enforce the lien of plaintiff's attorneys in an action which had been settled without the knowledge of the attorneys for plaintiff, evidence examined, and *held* insufficient to show that their client was not financially able to pay their fees.

2. SAME—CONSTRUCTION.

Under Code Civ. Proc. § 66, providing that from the commencement of an action the attorney for the party has a lien on his client's cause of action, which attaches to the verdict, report, decision, or final order in his client's favor, and the proceeds thereof, in whosesoever hands they may come; that the lien cannot be affected by any settlement between the parties before or after judgment; and that the court may determine and enforce the lien—no order could be made in an action which had been settled without the knowledge of plain-

tiff's attorneys where their application to enforce a lien against the defendant. did not show, the amount of compensation claimed, nor that their client was not so financially responsible as to be able to pay the amount actually owing them.

Appeal from Special Term, Niagara County.

Action by Charlotte C. Smith against the Acker Process Company. From an order permitting the continuance of the action to determine and enforce the lien of plaintiff's attorneys for services, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Ellsworth, Potter & Storrs, for appellant.

King, Leggett & Brown, for respondent.

WILLIAMS, J. The order appealed from should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs, with leave to plaintiff's attorneys to apply to the court, upon petition, to determine and enforce their lien for compensation for services, under section 66 of the Code of Civil Procedure, upon payment of the foregoing costs.

The action is to restrain the creation and continuance of a nuisance, and for damages occasioned by such nuisance. It was commenced in August, 1902, and issue joined in September, 1902. December 8, 1902, plaintiff conveyed her premises affected by the alleged nuisance to an officer of the defendant, and received therefor $3,730; and, in consideration thereof, she made a written agreement with defendant, settling the action and the subject-matter thereof, stipulating a discontinuance without costs, and directing her attorney to discontinue the action. In June, 1903, this and several other actions of a like nature against the same defendant were referred to a referee, to hear, try, and determine. The actions were to be tried together, the same proofs as to nuisance to be used in all of them. In July, 1904, the cases were brought to trial before the referee, and evidence taken apparently until the plaintiff's cases were closed. Then a motion was made at Special Term for a discontinuance of this action by reason of the written agreement of settlement made in December, 1902. This motion was heard August 1, 1904, and resulted in an order that the defendant be permitted to serve a supplemental answer alleging the settlement. The answer was at once served. October 17, 1904, a motion was made at Special Term for leave to continue the action for the purpose of determining and establishing the lien of plaintiff's attorneys, which resulted in the order from which this appeal is taken. The papers used upon such motion did not disclose the amount claimed by the attorneys as compensation for their services in the action, nor whether there was any express agreement with plaintiff as to the amount they should receive—whether a gross sum or a percentage of the sum recovered in the action. The action is not one where a percentage of the damages recovered would be likely to be made the basis for fixing the attorney's compensation. It was merely stated that they had been paid nothing, and a large amount was owing to them. There was no satisfactory showing in the papers that the plaintiff was

not a woman of sufficient financial responsibility to pay the attorneys what was due them. There is no doubt but the settlement was made, and was perfectly legal and proper between the parties, and that, by its terms, defendant was not to pay her attorneys—she was to pay them herself. There does not appear to have been any intention on the part of the defendant to deprive the plaintiff's attorneys of their compensation in the case. There was paid to the plaintiff at the time of the settlement a large sum of money ($3,730), and, after paying therefrom some liens and charges on the property conveyed by her, she had a considerable sum left ($1,500—$2,000). She was therefore apparently able then to pay her attorneys for their services, and the liens and papers very satisfactorily show that she has substantially that amount of property still. She has concededly a vacant lot worth $300—$500, and her son testifies that she has upwards of $1,000 invested in a business carried on by her husband, which is a lucrative one. Her husband says she has no other real property except the vacant lot. He does not say she has no personal property invested in his business or elsewhere. She is a married woman, supported by her husband, and is carrying on no business herself. It is true, she is made to state in her affidavit, in contradiction of her son and her husband, that she has no property of any kind except the vacant lot. If this be true, and she really intends so to testify, why does her husband fail to corroborate the statement? The papers do not, in view of what we have said, show that the plaintiff is not financially responsible and able to pay her attorneys for their services in the action. This being so, it seems to us there was no ground for making the order appealed from, or any other order, for the purpose of determining and enforcing any alleged lien of the attorneys. Until they show they cannot get their money from their own client, the court is not justified in entertaining any proceeding under section 66 of the Code.

The settlement was made without the knowledge or consent of the attorneys, and their rights should be protected. If their client is irresponsible and cannot be made to pay them, then the defendant must be made to respond, but not otherwise; and, whenever a prima facie case is made by the attorneys for relief under this section 66 of the Code, then the court should, in a proper way, entertain the application, and determine what lien, if any, exists, and take measures to enforce the same. This is the fair conclusion to be drawn from recent decisions by the Court of Appeals.

In Poole v. Belcha, 131 N. Y. 200, 30 N. E. 53, a settlement had been made by the parties, which the attorneys sought to set aside for the protection of their lien. The court said the provision of the Code—

"Does not prevent parties from settling and releasing judgments, suits, and controversies. If the release has the effect of defrauding the * * * attorney of his costs, the court has power to, and should, set it aside and protect the attorney's lien. But there was nothing shown on the motion to lead the court to believe that the attorney needed any protection. For aught that appears, his client is able and willing to pay all his reasonable and proper charges, and, if this is so, why should the parties be prevented from settling the litigation in their own way? * * * In order to warrant the court in disregarding a settlement and release made in an action, it must

be shown that to give full effect to them will operate as a fraud upon the attorney, or at least to his prejudice, by depriving him of his costs or turning him over to an irresponsible client."

In Matter of King, 168 N. Y. 53, 60 N. E. 1054, it was held that, under the last clause of section 66 of the Code, the court not only has jurisdiction to, but it must, either itself or by a reference, in its discretion, determine the amount of a client's indebtedness to his attorney; that the provision is not unconstitutional, and the parties are not entitled to a trial by jury of such issue; that the remedy is equitable in character, and the equity side of the court has jurisdiction. The manner in which the court could enforce the lien was not involved in that case, and was not considered. The court by the section is given the power to enforce the lien, as well as to determine that it exists and the amount thereof. The way in which it can be enforced will necessarily vary, according to the circumstances of each particular case.

In Fischer-Hanson v. Br. H. R. Co., 173 N. Y. 492, 66 N. E. 395, the question of determining and enforcing the lien in the various ways was considered. In that case it was determined and enforced by an action in equity brought against both parties to the action. A negligence action had been settled for $1,500, the money paid to the plaintiff, and he had gone out of the country with the same, so that the attorneys could not reach the money or their client. The attorneys claimed that by agreement they were entitled to one-half of the money paid on the settlement. The question was raised by demurrer to the complaint, and the court held the action properly brought, and that it could be maintained on the facts alleged, and the $750 recovered from the defendant in the negligence action. With reference to the remedy sought to be applied in the case we are deciding, the court said:

"This form of relief is clumsy and illogical, because it authorizes the trial of a dead lawsuit, in the interest of one who never owned the claim upon which it was founded. It was a device of the courts, not of the Legislature, and sprang from the necessity of providing some remedy against fraudulent settlements."

And then the court said with reference to section 66 of the Code:

"The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the stipulation, which was to furnish security to attorneys by giving them a lien upon the subject of the action. The common law gave them no lien until the entry of judgment, but the statute gives them one from the commencement of the action. If the claim is prosecuted to judgment, or to a decision upon which a judgment may be entered, the lien reaches forward and attaches to that also."

The court then considered the question whether the lien was lost when the claim was extinguished by a settlement, and held that it was not. As to the three remedies, by continuing the action to judgment for the benefit of the attorneys, by an action in equity, and by a proceeding under section 66 of the Code, the first one was spoken of unfavorably; the second, as permissible; the third, as expressly provided by the Legislature, and as adequate in all cases. It seems to us, from a consideration of these late expres-

sions of the Court of Appeals, that we should not favor the continuance of an action for the benefit of the attorney's lien. Its only object would be to arrive at the attorney's compensation in a case where there has been an agreement with the client for a percentage of the recovery; and even in such a case the result of a trial after a settlement would hardly be a fair indication of what the recovery would have been in the absence of the settlement which was contemplated by the agreement originally made. It seems to us that even in such a case a more satisfactory determination would be arrived at by the court, with or without the aid of a referee, under section 66 of the Code. If the attorneys see fit to bring an action in equity, the court cannot, of course, object to the application of that remedy; but, where the direction of the court is asked as to the other two remedies suggested, we think the court should rarely, if ever, permit the action to be continued, but should exercise the power clearly given by section 66 of the Code, and itself determine whether a lien exists, and the amount thereof, and should then, by appropriate remedy, enforce the lien so determined to exist.

In this case we cannot make any order under section 66 of the Code, because it is not shown what amount of compensation is claimed by the attorneys, and it is not shown that their client is not financially responsible, so as to be able to pay the amount actually owing. Leave will be given, however, to the attorneys, to make a new application for relief, under this section of the Code, upon payment of the costs awarded upon their appeal, and $10 costs of the motion already made in the court below.

Order reversed, with $10 costs and disbursements, and motion denied with $10 costs, with leave to plaintiff's attorneys to apply to the court, upon petition, to determine and enforce their lien for compensation for services, under section 66 of the Code of Civil Procedure, upon payment of the costs herein imposed. All concur.