## UNITED STATES v. HUDSON et al.

### No. 1489.

District Court, D. Montana.

May 21, 1941.

C. W. Buntin, Sp. Asst. U. S. Atty., of Lewistown, Mont., for plaintiff.

C. D. Borton, of Glasgow, Mont., and George W. Farr, of Miles City, Mont., for claimants.

PRAY, District Judge.

A claim of attorney's lien is asserted herein by Messrs. C. D. Borton and George W. Farr, attorneys at law, who had a contract to represent Patricia Hudson, a landowner and one of the defendants in the above-entitled cause, which is a condemna-

tion suit brought by the United States to condemn the lands therein described for the use of the Fort Peck Public Works Project in Montana; the contract was on a contingent fee basis and provided that in event of a condemnation suit being instituted by the government, counsel above named would represent the said defendant before the commissioners and at trial in court, and were to receive as compensation for their services 15% of such sum as might be awarded in excess of the appraised price of the land made by the government. The landowner was to pay all court costs and expenses. If settlement should be made without suit, then counsel were to be paid 10% of the sum received above the appraised price of the lands. It being understood that if there was no increase over the appraised price by the government no commission was to be paid. These were the main provisions of the contract under which counsel undertook to represent and defend the interests of Patricia Hudson in the above cause.

Counsel show much time consumed in the interests of defendant, numerous interviews, preparing and filing two motions and an answer; representing her before the commissioners appointed by the court to appraise the lands and accompanying them at time of appraisal; in fact, taking part in the selection of commissioners, stipulating with government counsel and investigating qualifications of those proposed for appointment. Sometime after the performance of the legal services aforesaid, defendant advised her counsel that she had decided to make a settlement with the government at the appraised price, and requested them to withdraw from the case as her counsel and presented a form of withdrawal which they signed. Before signing the withdrawal counsel announced to defendant that they would make a charge of $250 as a reasonable fee for services performed in her behalf to date of withdrawal. According to counsel this arrangement for a fee was agreeable to defendant, but in her affidavit, which was filed in the case, she denies that such an arrangement was made, and, although duly notified, she was not present to testify at the hearing, nor was her mother or other relatives, who seem to have had knowledge of the transaction from its inception. It appears from the testimony of Judge Borton that on at least two different occasions, when he announced what the fee would be for services to date of withdrawal, neither Patricia

Hudson nor her mother, who was present on one occasion, made any objection to the charge for services, and at the time of signing the withdrawal the former said: "I think it is better that we settle this matter, and it is necessary for me to have a withdrawal from you. If you will sign the paper, I will get my money sooner and so will you." Counsel therefore contend that there was then and there consummated an agreement between them for payment by her from the moneys received in settlement the sum of $250 for legal services. Counsel further contend that this new agreement was "a novation of, or superseded, the agreement under which the services were actually performed," and that even though such an agreement had not been made counsel would not have been denied compensation upon a quantum meruit basis, which would have been in the same amount, as appears from the testimony.

■ But it appears that after her settlement with the government defendant failed to pay her counsel, and on August 11th, 1939, they filed notice of lien in the above cause. Final judgment in condemnation was entered September 12th, 1939, in which it was provided that from the sum of $4,176.65 awarded defendant in full settlement, there should be retained in the registry of the court, undistributed, the sum of $300, awaiting the result of a hearing on counsel's claim of lien. After defendant filed her petition to distribute the said sum to her, counsel answered and a hearing was held. Testimony was given as to the reasonableness of the fee, and there was no denial. Under all the circumstances the court considers the charge reasonable for the services rendered by counsel, both of whom are lawyers of wide experience and who had theretofore served as judges in the courts of Montana—one as a Supreme Court Justice and the other as a District Judge.

■ That part of the case being disposed of, another important question remains— that of the claim of attorney's lien on the fund held in the registry of the court. It is evident that defendant was anxious to bring about a settlement with the government and obtain her money and counsel raised no objection to withdrawing as attorneys after the said agreement had been made for the payment of a specific sum as a fee for services already rendered defendant, which sum was to come out of the award in settlement, and this appears to be

a fair deduction from the proof. The court has considered Section 8993, R.C. Montana, on the subject of an attorney's lien, and also the point made by counsel as amicus curiæ, that this section gives the attorney a lien upon his client's cause of action or counterclaim, and that here no counterclaim was made and consequently no lien was acquired. In Yellowstone Park R. Co. v. Bridger Coal Co., 34 Mont. 545, 87 P. 963, 964, 115 Am.St.Rep. 546, 9 Ann.Cas. 470, the court held that in a proceeding to condemn land for public use no counterclaim is available as against the condemnor; that there is no provision requiring defendants to set up their claims in their pleadings in any form. In the Yellowstone Park case the principal objection was: "for the reason that no answer, counterclaim or any kind of a claim in damages has been filed in this action." In many states the defendant in a condemnation suit is not required to make formal appearance either by answer, counterclaim or otherwise. The complaint is treated as denied and the hearing is held as if formal issue had been made, but in Montana, construing the pertinent provisions of the statute together, it seems quite clear that defendant would be required to appear and make her defense as in an ordinary action.

Unlike the facts in the Yellowstone case, the government in the instant case had appraised the lands of defendant at a price less than she believed would fully compensate her for their taking, so that her answer and defense, if she had continued to contest the case with the government, would have been for a larger sum than that fixed by the government. The withdrawal was requested and granted, without fault on the part of counsel who were diligent in the performance of their duties. The first agreement provided that counsel should receive a contingent fee, dependent upon recovery as therein set forth; the requested withdrawal would deprive them of the opportunity to earn the contingent fee agreed upon; consequently, would they not be entitled to protection in their right to compensation. The Flush, 2 Cir., 277 F. 25, 28, 29; Kellogg v. Winchell, 51 App.D.C. 17, 273 F. 745, 16 A.L.R. 1159.

The court has examined many cases involving attorney's liens, and most of them relate to the successful efforts of counsel in obtaining a judgment or decree or producing a fund to which a lien attached and from which fees could be allowed. From questions decided it would appear that such attorneys were within their rights under the usual provisions of state statutes, which in many instances were similar to the Montana statute. Such cases are not of very much assistance in determining whether a charging lien or equitable assignment can be made to apply under the facts in the present case where no judgment or decree was secured or property restored, because of an intervening settlement, irrespective of any statutory provision expressly or by plain inference allowing it. For instance, in Colley v. Wolcott, 8 Cir., 187 F. 595, 597, the court held it to be a meritorious charge in a suit in equity upon the fund, where the conduct of the case by the attorney had resulted in the restoration of the property. One is entitled to be paid out of a fund when his skill and ability produced it. Bray v. Staples, 4 Cir., 180 F. 321, 327. A solicitor in a suit in equity for the complainants, by his zeal and ability, produced a fund which rendered a corporation solvent, and was entitled to his fees out of the fund; and many other authorities can be found of like tenor. In the present instance counsel might have carried the case to a successful conclusion under the first agreement had defendant permitted them to continue; the requested withdrawal deprived them of the opportunity to earn their fee under it, and after they had performed necessary legal services in the course of an endeavor to produce a fund or sum in excess of that for which defendant settled with the government. It might fairly be said that counsel contributed to the judgment or settlement made, by their services and, by withdrawing as counsel under the first agreement, as requested by defendant, thereby depriving themselves of whatever benefits they might have derived, as provided therein. In view of this situation and the subsequent agreement would the special or charging lien apply, which has been held to be "an equitable right to have the fees and costs due to him for his services in a suit secured to him out of the judgment or recovery in that particular suit; the attorney, to the extent of such services, being regarded as an equitable assignee of the judgment. It is based on the natural equity that the plaintiff should not be allowed to appropriate the whole of the judgment without paying thereout for the services of his attorney in obtaining such judgment." 6 C.J. § 364, p. 766; 7 C.J.S., Attorney and Client, § 211. It has been held that the charging lien may

be enforced upon application to the court in the suit in which the services were rendered.

■ The statute heretofore cited does not appear to exclude the operation of such a lien or equitable adjustment as counsel have petitioned for in this case. It may arise in favor of an attorney for his services in procuring a judgment or award. United States F. & G. Co. v. Levy, 5 Cir., 77 F.2d 972; Norrell v. Chason, 125 N.J. Eq. 230, 4 A.2d 88, 120 A.L.R. 1238; Coombe et al. v. Knox et al., 28 Mont. 202, 72 P. 641; 6 C.J., § 394, p. 782; 7 C.J.S., Attorney and Client, § 193; Ex parte Plitt, 19 Fed.Cas. 875, No. 11,228; Baker v. Tullock, 106 Mont. 375, 77 P.2d 1035. While the charging lien is generally recognized, many courts and law writers hold that it is not a lien at all; that there is no such thing as a lien upon a thing not in possession. The so-called special or charging lien of the attorney is sometimes said to be merely a claim to the equitable interference of the court to have the judgment or settlement or fund held as security for the debt. Jones on Liens, 3rd Ed., 155 et seq.; Goodrich v. McDonald, 112 N.Y. 157, 19 N.E. 649; Prichard v. Fulmer, 2 N.M. 134, 159 P. 39, 2 A.L.R. 474; 6 C.J. 767, note 85; 7 C.J.S., Attorney and Client, § 211.

Again, the following case, with similar facts and same principle: "In the federal courts of equity it frequently happens that the remedies provided by a state statute and their enlargement (though not controlling) are applied. In re Baxter & Co. [2 Cir.], 154 F. 22; Machcinski v. Lehigh Valley R. Co. [2 Cir.], 272 F. [920] 922. Counsel for the receivers, to uphold their opposition to the asserted lien, direct attention to a decision recently rendered in the case of Flanagan v. Conners, 123 Misc. 236, 204 N.Y.S. 823, wherein an attorney performed services for a client before the board of aldermen of the city of New York, for which he was to receive $1,500 out of a collectible claim of $6,500, which had been forfeited by his client for failure to perform a contract. The forfeited amount was returned, and upon refusal of the client to pay his attorney the latter sought to have a lien impressed upon the fund held by the comptroller of the city; but the court held that the attorney appearing before the aldermen did not possess a statutory lien, 'as he was not the attorney of record in an action or special proceeding,' nor did the contract to pay constitute an eq-

uitable assignment, since the comptroller had no express authority to pay him. This decision, however, does not seem to me to accord with the adjudications upon which my conclusion is based, for, entirely aside from the Judiciary Law, an attorney unquestionably has a charging lien, as pointed out above, under the common law, regardless of whether he has the actual possession or custody of the fund, provided, however, the fund or judgment was recovered or created by his efforts. * * * in my opinion, equitable considerations require the establishment of their lien in a reasonable amount and its enforcement in this action." Cunningham v. Sizer Steel Corp., D.C., 1 F.2d 653, 654. In some states there are cases holding that the charging lien of an attorney does not exist, although such lien now exists in most jurisdictions either by statute or by virtue of judicial decision. Graeber v. McMullin, 10 Cir., 56 F. 2d 497. It has also been held that aside from statute, the attorney is entitled to assert and enforce a charging lien. Royal Ins. Co. v. Simon, 20 Del.Ch. 297, 174 A. 444. A lien was upheld on the theory that attorney's services and skill created the fund. Cohen v. Goldberger, 109 Ohio St. 22, 141 N.E. 656.

The following quotation is from Holmes et al. v. Evans et al., 129 N.Y. 140, 29 N. E. 233, 234: "The performance of the services was, in effect, a condition, and non-performance by them would defeat their equitable right. It is well settled that, to entitle a plaintiff to specific performance in equity, he must show, as a condition precedent, 'performance, or at least a willingness to perform, on his part.' Gray v. Murray, 3 Johns.Ch. [167] 179; Pom.Eq. Jur. § 1407; May v. Schuyler, 43 N.Y. Super.Ct. [95] 107."

It was held in Royal Ins. Co. v. Simon, 20 Del.Ch. 297, 174 A. 444, 446: "Let the theory be as it may, the rule aside from statute appears to be established by the preponderating weight of the authorities that an attorney is entitled to assert and enforce what is commonly described as his charging lien; and the prevalence of so many statutes in which the lien is recognized and its enforcement regulated is rather strong and convincing evidence of the justice and equity which underlie it."

■■ A lien on the proceeds of litigation should be declared in favor of an attorney in a cause where equitable considerations require that such lien be recog-

nized. Haynie, Parks and Westfall v. Camden Gas Corp., 186 Ark. 842, 56 S.W. 2d 419; Schoenherr v. Van Meter, 215 N.Y. 548, 109 N.E. 625, 626; In re Carney, 93 Misc. 600, 158 N.Y.S. 585. Compiled Statutes, Sec. 6576, giving an attorney a lien on his client's cause of action or counterclaim, is broad enough to include all civil actions. Taylor v. Taylor, 33 Idaho 445, 196 P. 211.

An attorney who has a charging lien for his services is, to the extent of such services, to be regarded as an equitable assignee of the judgment or funds produced by his efforts. Epp v. Hinton, 102 Kan. 435, 170 P. 987; In re McCormick's Estate, 14 N.J.Misc. 73, 182 A. 485; Jacobsen v. Miller, 50 N.D. 828, 198 N.W. 349, 34 A.L. R. 317; Smith v. Keener, 270 Pa. 578, 113 A. 912. An attorney is regarded as the equitable owner of a fund he brought into court with his right to a reasonable fee for his services in bringing it. In re Lear's Estate, 204 Iowa 346, 213 N.W. 240.

Before adoption of the Code, the attorney, to extent of his services, with certain limitations, was regarded as an equitable assignee of the judgment. Anderson v. Star-Bair Oil Co., 34 Wyo. 332, 243 P. 394. An attorney may have a charging lien, although no judgment is ever reached. Conkling v. Austin, 111 Mo.App. 292, 86 S.W. 911. That an attorney could not claim a retaining lien may not preclude his asserting a charging lien. In re Levine's Estate, 154 Misc. 700, 278 N.Y.S. 36. An agreement between attorney and client that the former shall have a lien on the judgment is decisive as to the existence of the lien, and constitutes a valid equitable assignment of the judgment. United States F. & G. Co. v. Levy, 5 Cir., 77 F.2d 972; Tracy v. Ringole, 87 Cal.App. 549, 262 P. 73; Terney v. Wilson, 45 N.J.L. 282. A charging lien may arise out of an agreement between a client and his attorney that he is to receive a portion of the judgment, or proceeds thereof, provided it appears to be the intention of the parties that such judgment or proceeds is to be looked to for security. Alyea v. Hampton, 112 Fla. 61, 150 So. 242; In re Heinsheimer, 214 N.Y. 361, 108 N.E. 636, 638, Ann.Cas.1916E, 384; Nichols v. Orr, 63 Colo. 333, 166 P. 561, 2 A.L.R. 449. There is also authority to the effect that no charging lien can exist in the absence of an express agreement out of which an equitable assignment can arise. Spellman v. Bankers' Trust Co., 2 Cir., 6

F.2d 799, 800; McGown v. Dalzell, 72 Cal. App. 197, 236 P. 941.

Whether an agreement creates a lien is a matter of construction. Ingersoll v. Coram, C.C.Mass., 127 F. 418. A charging lien may cover an attorney's fee only to the extent allowed by applicable statutory provisions in the absence of a special agreement providing otherwise. Check v. Kaplan, 280 Mass. 170, 182 N.E. 305; Delval v. Gagnon, 213 Mass. 203, 99 N.E. 1095. Condemnation proceedings constitute a "special proceeding" for services in which attorneys are entitled to enforce a lien against an award. Swartz, Inc., v. City of Utica, 223 App.Div. 506, 228 N.Y. S. 660, motion to dismiss appeal granted, 252 N.Y. 573, 170 N.E. 148.

Attorneys employed by tenants on a contingent fee basis in a condemnation proceeding by a city were held to be entitled to a lien on the award. In re Allen St. in City of New York, 148 Misc. 488, 266 N.Y.S. 277.

Where the terms of an agreement between an attorney and his client fix the value of an attorney's services, his lien may be measured by such agreement. Lehigh & N. E. R. Co. v. Finnerty, 3 Cir., 61 F.2d 289.

In the absence of an agreement the reasonable value of the services rendered is to be considered in determining the amount of an attorney's charging lien. Klampe v. Klampe, 137 Minn. 227, 163 N.W. 295.

The lien extends only so far as to embrace an amount actually due, or in good faith believed to be due. Robinson v. Hawes, 56 Mich. 135, 22 N.W. 222.

Notice of claim of lien is necessary where no lien is expressly given by statute. Lablache v. Kirkpatrick, 8 N.Y. Civil Proc. 256.

From an examination of the authorities conflicts will be found to exist in respect to the nature and applicability of attorney's liens, but in view of the facts here established the better reasoning would seem to favor the claimants and the court in holding that they are entitled to equitable consideration in respect to the fund withheld, to the extent of the sum named, as security for the payment thereof. Whether it be considered a charging lien, an equitable assignment, or a plain interference on the part of the court in the interest of equity and justice, it does not appear that the court is prohibited from protecting coun-

sel when the greater weight of the evidence discloses an agreement to pay them out of the award in question.

In the opinion of the court counsel are entitled to a decision in their favor, and it is so ordered.